UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DOUGLAS BRADLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 2:05 CV 39 |
| | ) |
| WESTERN & SOUTHERN FINANCIAL GROUP, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**I. BACKGROUND**

This matter is before the court on defendant's motion for summary judgment (docket # 14). Defendant is a life insurance company that formerly employed plaintiff as a sales representative and manager. Plaintiff brought suit on January 7, 2005, alleging that defendant failed to promote him, resulting in his constructive discharge, because of his race in violation of 42 U.S.C. § 1981. (Compl. ¶ 7.) Defendant made its motion for summary judgment on May 10, 2005, claiming that plaintiff's claim was time-barred by a contractual six-month limitation period set forth in the parties' employment agreement.[1] The relevant portion of that agreement reads:

---

[1] The court uses the terms "agreement" and "contract" in reference to the document signed by both parties setting forth details of the parties' business relationship, attached as Exhibit A to defendant's motion for summary judgment. By using this language, the court does not intend to convey that it has made any judgment as to whether the document, and the clauses therein, are valid and binding on the parties.

> You agree: . . . Not to commence any action or suit relating to your employment with Western-Southern more than six months after the date of termination of such employment, and to waive any statute of limitation to the contrary.

(Def.'s Mot. Summ. J. Ex. A, 3.) There is some question as to whether plaintiff's employment with defendant ended on April 30, 2004, or June 4, 2004, but there is no question that plaintiff's complaint was filed more than six months after either date. Thus, according to defendant, so long as the contract and the clause therein are valid, enforceable, and binding on the parties, plaintiff's claim is time-barred.

Plaintiff's response consists of an assortment of arguments that the contract and the six-month limitation clause are unenforceable and inapplicable to this case. Plaintiff's argument can be broken down into seven sub-arguments: (1) the contract is unenforceable because it does not set forth the location and duration of employment; (2) the clause is unenforceable because a statutory limitation period applies that cannot be shortened by contract; (3) the contract is no longer enforceable because the agreement terminated when plaintiff's employment terminated; (4) the contract is no longer enforceable because it was location-specific and did not survive plaintiff's transfer to another location; (5) the limitation clause does not bar this cause of action because the clause prohibits only actions for breaches of the agreement itself, not actions alleging the defendant's failure to offer plaintiff promotions; (6) the limitation period was waived by defendant; and finally, (7) the limitation clause is ambiguous, as it is not

2

clear whether a clause prohibiting claims "relating to your employment" encompasses failure-to-promote claims. (*See generally* Pl.'s Response to Def.'s Mot. Summ. J.)

For the reasons set forth below, the court finds that there is a genuine issue of material fact with respect to the last of these issues. Regardless of the outcome of each remaining issue, defendant's motion fails because there is a genuine issue of material fact as to whether the six-month limitation clause actually applies to, and could therefore operate to bar, failure-to-promote claims like the one brought by plaintiff in this case.

## II. LEGAL STANDARD

The FEDERAL RULES OF CIVIL PROCEDURE mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). RULE 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable

jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986); *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.,* 45 F.3d 231, 234 (7th Cir. 1995); *Doe,* 42 F.3d at 443.

The party seeking summary judgment, the movant, bears the initial responsibility of informing the court of the basis for his motion and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Once the moving party has met his burden, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson,* 477 U.S. at 252; *Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003) (citing *Celotex,* 477 U.S. at 324).

## III. ANALYSIS

As stated above, the first question the court must ask in reviewing a motion for summary judgment is whether the movant has shown that there is no genuine question of material fact left to be resolved by a finder of fact. In this case, the court's analysis

does not reach beyond this first inquiry because defendant has not met its initial burden. Defendant argues that the plaintiff's cause of action is time-barred according to the employment agreement. Even assuming, *for the purposes of this order only,* that the contract and limitation clause is valid and binding on the parties, defendant's motion fails because the clause contains a latent ambiguity, thus creating a genuine issue of fact as to whether the parties intended the provision to bar cases like the one before the court today. Therefore, defendant's motion for summary judgment, grounded in the applicability of the provision to this case, must fail.

The court's analysis below is a two-step process. First, the court will determine as a legal matter whether the clause is ambiguous. If the court finds that it is, the court will then go on to ascertain the method of resolving the ambiguity and decide whether doing so is appropriate at the summary judgment phase. The second issue hinges on what type of ambiguity, either patent or latent, is at issue in this case. All parties appear to agree that the issue of contract interpretation and ambiguity is governed by Indiana law.[2]

---

[2] Plaintiff argues briefly that "federal law" might control the resolution of another issue raised by plaintiff in his response to defendant's motion for summary judgment. (Pl.'s Response 14.) Specifically, plaintiff states that "one could argue that federal law, rather than state law, controls the question whether a federal statute of limitations can be shortened by contract." (Pl.'s Response 14.) Plaintiff's argument for the application of "federal law" appears limited to that specific issue. Indeed, plaintiff himself cites Indiana law throughout the remainder of his brief, including the section setting forth his argument that the contract is ambiguous. (Pl.'s Response 10-11.) The court therefore presumes that plaintiff would concur that Indiana law controls the issue of contract interpretation and, specifically, contract ambiguity.

*A) Is the contract ambiguous?*

If the language of a contract is "clear and unambiguous," the court shall give that language "its plain and ordinary meaning." *Barclay v. State Auto Ins. Cos.,* 816 N.E.2d 973, 975 (Ind. Ct. App. 2004) (citation omitted). "Whether a contract is ambiguous is a question of law for the court." *Western Ohio Pizza, Inc. v. Clark Oil & Refining,* 704 N.E.2d 1086, 1091 (Ind. Ct. App. 1999). "[A] contract is not ambiguous simply because a controversy exists where each party favors a different interpretation." *Northern Ind. Commuter Transp. Dist. v. Chi. SouthShore and South Bend R.R.,* 744 N.E.2d 490, 496 (Ind. Ct. App. 2001). Rather, "[a] contract will be found to be ambiguous only if reasonable persons would differ as to the meaning of its terms." *Beam v. Wausau Ins. Co.,* 765 N.E.2d 524, 528 (Ind. 2002).

The limitation clause in this case prohibits an employee from commencing "any action or suit relating to your employment . . . more than six-months after the date of termination of such employment." (Def.'s Mot. Summ. J. Ex. A, 2-3.) Specifically at issue is whether, in the context of a failure-to-promote / constructive discharge claim, the term "employment" includes or excludes *potential* employment that plaintiff would have received as a result of a promotion. It is the opinion of this court that reasonable people could read the clause both ways. After all, the six-month clock begins to run after "termination of *such* employment." This suggests that the clock does not begin to run on an employee's ability to bring a lawsuit relating to his employment until that employment is over. In the context of a failure-to-promote claim, a reasonable person

6

could find it difficult to imagine how potential employment can be terminated, thus starting the clock. Accordingly, a reasonable person could reach the conclusion that potential employment was not contemplated by the parties when they agreed to the limitation clause. On the other hand, a reasonable person could read the language "*any action or suit relating to your employment*" as meaning exactly that– any action, including actions relating to potential employment. After all, a failure-to-promote / constructive discharge claim hinges on the notion that an employer made one's present employment so unbearable that no choice was left but to quit. Thus, the clause could make perfect sense when applied to such a claim because self-termination of one's present employment is what begins the running of the six-month clock. Because reasonable people could come to different conclusions about the meaning of the clause, the court finds that the clause is ambiguous.

In *Taylor v. Western & Southern Life Ins. Co.,* the Seventh Circuit reached the same conclusion when interpreting the same limitation clause in another Western & Southern employment agreement under Illinois law:

> On one hand, the phrase "relating to" one's employment can be read broadly to encompass any claim connected with one's affiliation with Western-Southern. On such a reading, the Taylors' failure-to-promote claims fall within the scope of the clause and would be time-barred. On the other hand, the same clause states that such claims must be brought within six-months of "the date of termination of such employment." This suggests that the clause be read narrowly to encompass only claims stemming from one's current employment agreement, not on the defendant's refusal to enter a new one. On this reading, the Taylors' failure-to-promote claims would fall outside the scope of the clause and therefore survive.

966 F.2d 1188, 1202 (7th Cir. 1992). The court concluded: "We are persuaded that the clause is ambiguous with respect to promotion claims." *Id.*

Both plaintiff and defendant devote a fair amount of time to *Taylor* in their briefs, so the court takes a moment to discuss it here in some detail. Plaintiff considers the Seventh Circuit's interpretation of the same contract provision in another Western & Southern employment agreement to be highly persuasive. (Pl.'s Response 11.) However, defendant argues that the *Taylor* holding hinged on the fact that the plaintiffs in that case alleged that their wrongfully-denied promotions would have resulted in *new* employment relationships; if two employment relationships exist, one old and one new, then the term "employment" might be ambiguous as applied to such a situation. In this case, defendant argues, plaintiff specifically states in his response to defendant's motion that his wrongfully-denied promotion would *not* have resulted in a new employment relationship, but merely placement on a higher rung of the career ladder. (Def.'s Reply 10.)

Plaintiff does in fact make this statement. (Pl.'s Response 5.) However, the statement was made in the context of a second, separate counter-attack on defendant's motion for summary judgment.[3] This second argument is not presented in such a way

---

[3] Specifically, plaintiff argues that the "default" statute of limitations set forth in 28 U.S.C. § 1658(a) should apply in this case. Section 1658(a), which imposes a four-year limitation period when a statute creating a federal cause of action does not specify a limitation period, only applies to actions accruing after December 1, 1990. Section 1981 does not have a statute of limitations of its own, and thus § 1658(a) would presumably apply to any § 1981 claim accruing after December 1, 1990. To show that his claim did

8

to suggest that the theory was intended to be read in harmony with the other arguments plaintiff makes in his response. And plaintiff certainly did not, in his argument regarding the ambiguity of the contract, indicate that his wrongfully-denied promotion would not result in a new and distinct employment relationship. Plaintiff makes no mention of the subject at all in his ambiguity argument. Plaintiff is entitled to advance two (or more) alternative reasons why the limitation clause does not bar his cause of action. For example, here he argues first, that a four-year statute of limitations applies and cannot be shortened by contract, and second, that even if the four-year period does not apply or can be shortened by contract, the clause is ambiguous. Indeed, plaintiff's entire response can be summed up as a series of "even if"s, as demonstrated by the conclusion of his response. (Pl.'s Response 15 (plaintiff summarizes his argument in an itemized list, almost each one beginning with "Even if...").) The court will not pick and choose pieces of plaintiff's brief to pit his own arguments against the others. FEDERAL RULE OF CIVIL PROCEDURE 8 permits inconsistent and contradictory theories of recovery, and there is no rule requiring that a party must choose one path only and stick with it, at least at this stage of the proceedings. *See Am. Int'l Adjustment Co. v. Galvin,* 86 F.3d

---

accrue after this date, plaintiff points out that in 1991, Congress amended § 1981 to make failure-to-promote claims, where the wrongfully-denied promotion would *not* have resulted in a *new and distinct* employment relationship, viable for the first time. Plaintiff argues that: (1) his claim would not have resulted in a new employment relationship, therefore (2) his § 1981 claim could only have been viable after the 1991 amendments to § 1981, therefore (3) his claim necessarily accrued after December 1, 1990, and therefore (4) § 1658(a) is perfectly applicable to this case. Plaintiff then later goes on to argue that the four-year statute of limitations set forth in § 1658(a) cannot be shortened by contract.

1455, 1460 (7th Cir. 1996) (doctrine of election of remedies has been abolished in federal court). In that spirit, the court rejects defendant's assertion that parts of plaintiff's argument going toward establishing a separate, alternative counter-attack to defendant's contractual limitation period argument negates *Taylor's* persuasiveness as applied to this case.

Moreover, the court is not convinced that defendant is right that *Taylor* is so fact-sensitive that the Seventh Circuit would not have reached the same conclusion if there had not been an allegation that the wrongfully-denied promotion would result in a "new and distinct relationship." Perhaps a reasonable person could conclude that the limitation clause, which prohibits suits "relating to your employment" encompasses a present employment relationship, but not an employment relationship that has been changed or altered by virtue of a promotion in terms of the benefits, compensation, and duties relating to that employment relationship. The "newness" of the relationship that would have resulted from a wrongfully-denied promotion may very well have been the nail in the coffin for the Seventh Circuit, but it may not be for all reasonable people. In any event, the court does not consider *Taylor* to be binding, controlling, perfectly analogous precedent, because it is not. In that case, the Seventh Circuit was interpreting Illinois law and had a different set of factual nuances before it. The court simply finds it highly persuasive that the Seventh Circuit in *Taylor* reached the same conclusion that the court does here today– that the provision appearing in Western & Southern's

employment agreement is ambiguous when one attempts to apply it to a failure-to-promote claim.

Defendant insists that courts have previously enforced limitation clauses like the one at issue here, emphasizing *Cheek v. Western & Southern Life Insurance Co.,* No. S92-204M (N.D. Ind. Mar. 9, 2003) and *Prudential Insurance Co. v. Myers,* 44 N.E. 55 (Ind. App. 1896).[4] However, neither *Cheek* nor *Prudential* address whether the limitation periods in those cases were ambiguous. True, the contract in *Cheek* included a six-month limitation period for employment claims identical to the one at hand. However, the *Cheek* court even notes that "Ms. Cheek does not contend that Western-Southern's contractual limitations are unreasonable, that they contravene a statute or public policy, or that they are unclear or ambiguous." *Cheek,* slip op. at 4. Rather, the *Cheek* plaintiff argued that "she had no opportunity to read her employment contract before signing it." *Id.* Accordingly, that was the issue that the *Cheek* court addressed. The court declines to manufacture rules of law from decisions not addressing the issue at hand.

*B) Is resolution of the contract's ambiguity proper on motion for summary judgment?*

Having found that the six-month limitation clause is ambiguous, the court must now determine the proper method of resolving this ambiguity. The method to be used,

---

[4] Defendant mistakenly attributes the *Prudential* decision to the Indiana Supreme Court. (Def.'s Mem. Supp. Mot. Summ. J. 5.) That case was actually decided by the Indiana Appellate Court. *See Prudential,* 44 N.E. at 55.

11

and whether resolution is appropriate at the summary judgment phase, depends on the type of ambiguity at issue.

"[A]mbiguities in a document may be of two types, patent or latent. A patent ambiguity is apparent on the face of the instrument and arises by reason of an inconsistency or inherent uncertainty of language used so that the effect is either to convey no definite meaning or a confused meaning. Extrinsic evidence is not admissible to explain or remove a patent ambiguity." *Adams v. Reinaker,* 808 N.E.2d 192, 196 (Ind. Ct. App. 2004). "[R]esolution of this ambiguity presents a question of law." *Oxford Fin. Group, Ltd. v. Evans,* 795 N.E.2d 1135, 1143 (Ind. Ct. App. 2003). When the meaning of the contract is a question of law, it is an issue for which "summary judgment is particularly appropriate." *City of Lawrenceburg v. Milestone Contractors, L.P.,* 809 N.E.2d 879, 883 (Ind. Ct. App. 2004).

"A latent ambiguity arises not upon the face of the instrument by virtue of the words used, *but emerges in attempting to apply those words in the manner directed in the instrument.* Extrinsic evidence is admissible to explain or clear up a latent ambiguity." *Adams,* 808 N.E.2d at 196 (emphasis in original). When interpretation of a contract provision warrants the consideration of extrinsic evidence, the issue is one of fact precluding summary judgment. As stated by the Indiana Supreme Court, "while the contract is ambiguous and uncertain in its terms, we believe that the meaning of the contract may well need to be determined by extrinsic evidence. As such, its construction is a matter for the factfinder. Rules of contract construction and extrinsic evidence need

12

to be employed to determine and give effect to the parties' reasonable expectations. Under such circumstances, resolution of this issue is inappropriate for summary judgment." *Fresh Cut, Inc. v. Fazli,* 650 N.E.2d 1126, 1133 (Ind. 1995) (citations omitted). In other words, "[i]f reasonable men would find the contract susceptible of more than one construction, ambiguity exists making summary judgment inappropriate, it being the responsibility of the trier of fact to ascertain the extrinsic facts necessary to interpret the contract." *Ancich v. Mobil Oil Corp.,* 422 N.E.2d 1320, 1321-22 (Ind. Ct. App. 1981).

The ambiguity here is latent, rather than patent. The sentence is not inherently contradictory or nonsensical just by virtue of the words used. Rather, questions arise as to the precise meaning of the term "employment" when one attempts to apply the provision to facts such as the ones before the court today. A careful reading of the rest of the agreement does not shed any light on the meaning of the limitation clause. The agreement contains no other provisions suggesting what "employment" means or hinting at whether potential positions that would have been held if one were not wrongfully denied a promotion would fall under the "employment" umbrella. "Where a contract is ambiguous . . . and its meaning cannot be gleaned from the four corners of the instrument, the intention of the parties is a question of fact and resort to extrinsic evidence is proper." *Anderson v. Horizon Homes, Inc.,* 644 N.E.2d 1281, 1290 (Ind. Ct. App. 1995); *see also Adams,* 808 N.E.2d at 196. Indeed, in such situations, "it is the *responsibility* of the trier of fact to ascertain the facts necessary to construe the contract." *City of Lawrenceburg,* 809 N.E.2d at 883 (emphasis added). Thus, there is a genuine issue

13

of material fact as to what the parties intended the limitation clause to mean as applied to the facts of this case, which will be properly resolved after the consideration of extrinsic facts, not on this motion for summary judgment as a matter of law. As explained above, "[r]ules of contract construction and extrinsic evidence need to be employed to determine and give effect to the parties' reasonable expectations. Under such circumstances, resolution of this issue is inappropriate for summary judgment." *Fresh Cut,* 650 N.E.2d at 1133 (citations omitted).

Plaintiff argues that the ambiguity should be resolved by resort to the doctrine of *contra proferentem.* (Pl.'s Response 11.) Plaintiff contends that, according to that doctrine, the ambiguous clause must be construed against the defendant, who allegedly drafted the agreement. However, "[i]t is law of long standing that such a rule comes into play only when all other rules fail." *Ind.-Ky. Elec. Corp. v. Green,* 476 N.E.2d 141, 146 (Ind. Ct. App. 1985) (citing *Falley v. Giles,* 29 Ind. 114 (1867)); *see also William Blair and Co., LLC v. FI Liquidation Corp.,* 830 N.E.2d 760, 777-78 (Ill. App. Ct. 2005) ("*[C]ontra proferentem* is a secondary rule of interpretation that should be invoked only after ordinary interpretive guides have been exhausted."). Thus, the application of *contra proferentem* is "premature" in situations where "there has not yet been any attempt to resolve the ambiguity through the 'ordinary interpretive guides'– namely, a consideration of the extrinsic evidence." *William Blair,* 830 N.E.2d at 778. Indeed, if the court were to apply the rule of *contra preferentem* to a finding of ambiguity at the current stage of inquiry, then the rule allowing for the consideration of extrinsic evidence to interpret latently

14

ambiguous contracts would be meaningless in as far as a court would never arrive at the point of actually viewing any offered extrinsic evidence. Plaintiff's argument for the application of *contra proferentem* at this stage in the proceedings is therefore rejected.

## IV. CONCLUSION

Defendant advances only one argument in its motion for summary judgment– that the plaintiff's failure-to-promote claim is barred by the six-month limitation clause of the employment agreement. For defendant's theory to succeed, it must first be established that the six-month limitation clause does in fact cover failure-to-promote claims. As stated above, there is a genuine issue of material fact as to whether this is the case, warranting the consideration of extrinsic evidence. The existence of this genuine issue of fact, alone, precludes summary judgment in defendant's favor– defendant has not met its burden to show that there are no genuine issues of material fact and that it should prevail as a matter of law. The court need not discuss the remaining issues raised in relation to this motion because regardless of the outcome of those issues, defendant's motion will still fail.

The court emphasizes that it makes no finding as to the validity or binding nature of the contract or clause at issue here. The court also expresses no opinion as to whether the six-month limitation clause bars or does not bar plaintiff's cause of action. The court only finds that the defendant, who has made this motion for summary judgment, has not met its initial burden to show that no genuine issue of material fact

15

exists and that it is entitled to judgment as a matter of law. Defendant's motion for summary judgment (docket # 14) is **DENIED.**

                                      **SO ORDERED.**

**ENTER:** October 20, 2005

                                      s/ James T. Moody
                                      JUDGE JAMES T. MOODY
                                      UNITED STATES DISTRICT COURT